UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM KENNEDY                                                    PLAINTIFF

v.                                               CIVIL ACTION NO. 3:15-CV-00741-CRS-DW

LIFE INSURANCE COMPANY
OF NORTH AMERICA                                             DEFENDANT

<u>Memorandum Opinion</u>

I.     <u>Introduction</u>

This matter is before the Court on the motion of Defendant Life Insurance Company of North America (LINA) for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 27. Plaintiff William Kennedy responded, ECF No. 31. LINA replied, ECF No. 34.

Kennedy filed a cross-motion for summary judgment, ECF No. 28. LINA responded, ECF No. 30. Kennedy replied, ECF No. 35.

Because LINA and Kennedy's motions for summary judgment involve similar issues and the same facts, the Court will address them in a single memorandum opinion and order. For the reasons explained below, the Court will grant LINA's motion for summary judgment. The Court will deny Kennedy's cross-motion for summary judgment.

II.     <u>Background</u>

In 2002, Kennedy began working as a training supervisor for Perma Fix Environmental Services. Admin. R. 277, ECF No. 11. His job duties included (1) managing the RADCON Alliance Training Program, (2) ensuring that the training and qualifications of the RADCON Alliance staff were properly validated and documented, and (3) directing continued training and requalification. *Id.* at 539.

As part of his Perma Fix Environmental Services employee benefits, Kennedy was insured under a short term disability policy, Policy Number LK-750398. *Id*. at 130–77. He also was insured under a long term disability policy, Policy Number LK-961385. Lodi Decl. 5, ECF No. 27-2. LINA issued both disability policies. *Id*.; Admin. R. 277, ECF No. 11. Perma Fix Environmental Services appointed LINA to adjudicate claims submitted under the policies. Lodi Decl. 5, ECF No. 27-2; Admin. R. 174–75, ECF No. 11.

A. Relevant Terms of the Long Term Disability Policy

The long term disability policy under which Kennedy was insured defines "disability/disabled" as "unable to perform the material duties of his or her Regular Occupation" and "unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." Lodi Decl. 8 ECF No. 27-2. The policy provides, "[t]he Insurance Company will pay Disability Benefits if an Employee becomes disabled while covered under this Policy. . . . He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid." *Id*. at 35. The policy further states, "[t]he Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability." *Id*.

The policy provides that the elimination period—the time during which an employee must meet the definition of disability but before benefits are paid—for a long term disability claim is ninety days. *Id*. at 11. To receive long term disability benefits, an eligible employee must give LINA written or telephonic notice of a claim within thirty-one days of the event that led to his becoming disabled. *Id*. at 21. The employee must also provide written proof of loss within ninety days after becoming disabled. *Id*. at 22. If an employee is unable to submit proof of loss within ninety days, he may do so up to a year after the end of the ninety-day period. *Id*. The

policy states that "[i]f written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied." *Id*.

The policy specifies the procedure for appealing LINA's denial of long term disability claims. *Id*. at 29. The policy states, "A written request for appeal must be made to the Insurance Company within 60 days (190 in the case of any claim for disability benefits) from the date the denial was received." *Id*. If an insured employee fails to timely submit a written request for appeal, he waives his right to appeal the denial of a claim for long term disability benefits. The policy then explains that LINA has between forty-five and sixty days to review the appeal and render its decision. *Id*.

      B.      <u>Relevant Terms of the Short Term Disability Policy</u>

The short term disability policy under which Kennedy was insured is similar to the long term disability policy. The short term disability policy defines "disability/disabled" as "unable to perform the material duties of his or her regular job" and "unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Job." Admin. R. 136, ECF No. 11. The policy provides for a seven-day elimination period, and benefits are paid up to twelve weeks. *Id*. at 136–37. Employees approved for short term disability benefits receive up to 66.67% of their weekly covered earnings or $750.00 per week, whichever is the lesser amount. *Id*. at 136. "Weekly covered earnings" means an employee's wage or salary, excluding bonuses, commissions, overtime pay, and other additional compensation. *Id*.

The short term disability policy further states that LINA will pay disability benefits only if the employee satisfies the elimination period, is under the appropriate care of a physician, and meets all other terms and conditions of the policy. *Id*. at 140. Additionally, the employee must

"provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid." *Id*.

To receive short term disability benefits, the employee must notify LINA of his claim within thirty-one days of becoming disabled or "as soon as reasonably possible." *Id*. at 133. After LINA is notified of the short term disability claim, it sends the employee claim forms for filing proof of loss. *Id*. at 145. The employee must give written proof of loss to the insurance company within ninety days after the day that she became disabled. *Id*. If an employee cannot submit his proof of loss within ninety days, he may do so up to a year after the end of the ninety-day period. *Id*.

The long term disability policy specifies the procedure for appealing LINA's denial of claims. *Id*. at 152. The policy states, "A written request for appeal must be made to the Insurance Company within 60 days (180 in the case of any claim for disability benefits) from the date the denial was received." *Id*. An employee who fails to timely appeal the denial of his claim waives the right to such an appeal. *Id*. The policy then explains that LINA had between forty-five and sixty days to review the appeal of a denial of a claim for long term disability benefits and provide its decision on the appeal. *Id*.

### C. LINA's Short-Term-to-Long-Term-Disability-Claims Procedure

In limited circumstances, LINA transitions claims for short term disability benefits into claims for long term disability benefits. Lodi Decl. 33, ECF No. 27-2. The short-term-to-long-term-disability-claims policy that was in effect when Kennedy filed his claim for short term disability benefits was revised in November 2009. *Id*. Under the revised policy, LINA transitions claims for short term disability benefits into claims for long term disability benefits when the claims for short term disability benefits reach "maximum duration." *Id*. LINA transitions a short

term disability claim expected to reach maximum duration even when it denies the claim due to an exclusion in the policy.[1] *Id.* at 34. LINA's short-term-to-long-term-disability-claims policy states, "[t]he claim should still be investigated for [long term disability] benefits in a timely manner." *Id.*

D. History of Kennedy's Claim

Before filing the claim for disability benefits that is at issue in this case, Kennedy had filed two claims for short term disability benefits, which LINA approved and paid. After a blood clot formed in his left lung, Kennedy began his first period of short term disability on December 23, 2010. Admin. R. 82, 123–24, ECF No. 11. He returned to work on January 13, 2011. *Id.* A few months later, Kennedy was diagnosed with a severe infection in his right lung and began a second period of short term disability between June 11, 2012 and June 18, 2012. *Id.* at 46–47, 315–16. He returned to work on July 2, 2012. *Id.* at 315–16.

Two months after returning to work in July 2012, Kennedy filed the claim for disability benefits that is at issue in this case. *Id.* at 276–79. On the application for disability benefits, Kennedy stated that he was suffering from severe peripheral neuropathy in his feet, hands, and legs. *Id.* at 276. His last day of work was August 16, 2012. *Id.* The first day he was unable to work—and thus met the definition of disability provided by the short term disability policy—was August 17, 2012. *Id.* He was forty-five years old when he filed the claim for disability benefits. *Id.* at 1.

Kennedy called LINA to notify the insurance company about his claim for disability benefits. *Id.* at 383–91. On August 23, 2012, LINA wrote Kennedy a letter explaining that it had

---

[1] The short term disability policy includes several exclusions. For example, LINA will not pay any short term disability benefits for a disability that results from suicide, attempted suicide, or self-inflicted injury, war, participation in a riot, or commission of a felony. Admin. R. 146, ECF No. 11.

received his application for short term disability benefits and that it needed more information to process his claim. *Id*. at 110. LINA requested that Kennedy examine and make any required changes to a "Telephonic Report of Claim" form that a representative had partially filled out during the phone call in which Kennedy initially notified LINA about his claim for disability benefits. *Id*. LINA also requested that Kennedy have his physician complete an enclosed medical request form. *Id*. LINA then notified Kennedy that he was responsible for sending it the requested information by October 12, 2012. *Id*. At the end of the letter, LINA stated that it would contact Kennedy after thirty days to update him on the status of its evaluation of his short term disability claim. *Id*.

Kennedy returned the "Telephonic Report of Claim" form to LINA on September 5, 2012. *Id*. at 276–79. Under the heading "Please list any hospitals, clinics, or physicians that treated you for your condition," he listed the name of five physicians: his family practitioner, Dr. Dwight Willett, three neurologists, and a pain clinic. *Id*. at 277. Only next to Dr. Willett's name did Kennedy list a treatment date that corresponded with the timeline of his peripheral neuropathy claim for which he was seeking disability benefits. *Id*.

On August 23, 2012, LINA faxed Dr. Willett a copy of a medical request form. *Id*. at 108. In a letter attached to the medical request form, LINA requested that Dr. Willett send copies of any office notes pertaining to Kennedy's treatment beginning on August 15, 2012, a hospital intake/discharge summary and/or operative reports, test results and findings, any treatment plan, restrictions and limitations preventing Kennedy from working, and an estimated return-to-work date. *Id*. LINA then wrote, "Please be advised that an 'off work' note is not sufficient documentation to certify disability." *Id*.

Dr. Willett returned the medical request form to LINA on September 7, 2012. *Id*. at 280. Dr. Willett stated that he had diagnosed Kennedy with back pain and peripheral neuropathy, pneumonia, pulmonary embolus, depression, and anxiety. *Id*. In response to the question, "What are the specific restrictions that you have placed on your patient?," Dr. Willett wrote "standing, sitting for 8 hours/day" and "sitting 8 hours/day to develop material." *Id*. Dr. Willett then checked "no" to the question of whether Kennedy could return to work and noted that Kennedy was "unable to perform." *Id*. Dr. Willett did not provide any of the additional information that LINA had requested in its letter, including office notes, hospital intake summaries or operative reports, test results, treatment plants, restrictions and limitations, or an estimated return-to-work date. *Id*.

On three occasions, August 30, 2012, September 13, 2012, September 25, 2012, LINA followed up with Dr. Willett about receiving the medical information listed in its letter. *Id*. at 18. LINA noted that on October 8, 2012, it was advised that the requested medical information had been sent by facsimile on September 11, 2012, but LINA also recorded that it had not received the information. *Id*. There is no evidence in the record showing that LINA ever received this information from Dr. Willett. *Id*.

On November 15, 2012, LINA wrote to Kennedy about his claim for short term disability benefits. *Id*. at 100. LINA stated that it was unable to approve his claim for benefits. *Id*. It explained that it had requested medical information from Dr. Willett several times, but it had not received any medical documentation supporting the claim for disability benefits. *Id*. LINA stated that it had accordingly closed the claim. *Id*. LINA would not pay any short term disability benefits. *Id*. LINA then wrote that if Kennedy disagreed with its conclusion to deny him short term disability benefits, he needed to submit an appeal letter within 180 days. *Id*. at 101. LINA

noted that Kennedy could include additional information, such as medical records, in his appeal letter. *Id*.

Kennedy did not appeal LINA's denial of his short term disability claim within 180 days. Lodi Decl. ¶¶ 6–7, ECF No. 27-2. Nor did he provide notice and proof of loss for long term disability benefits during that time period. *Id*. ¶ 8. LINA never paid Kennedy short term or long term disability benefits. And it did not receive a request from Kennedy to appeal the denial of a long term disability claim. *Id*. ¶ 10.

Two years after LINA sent Kennedy the letter denying the claim for short term disability benefits, Kennedy's counsel wrote to LINA and stated that he had been retained to represent Kennedy. Admin. R. 272, ECF No. 11. Counsel requested all documents concerning Kennedy's claim for benefits and other information about Kennedy's claim for long term disability benefits, such as when the appeal was due. *Id*. at 272–73.

In May 2015, Kennedy's counsel again wrote LINA and stated that the insurance company "failed to render a decision as to his long term disability (LTD) benefits" and that "Mr. Kennedy previously submitted a claim for disability benefits." *Id*. at 427, 520. Kennedy's counsel further stated, "While [LINA] denied Mr. Kennedy's short-term disability (STD) benefits, there is no indication that [LINA] rendered a decision on his LTD benefits. Pursuant to its own claims policies and procedures, [LINA] was required to provide a LTD investigation and decision— regardless of the decision on Mr. Kennedy's STD benefits." *Id*. Kennedy's counsel then requested that LINA confirm that Kennedy had exhausted his claim for long term and short term disability benefits. *Id*. Kennedy's counsel alternatively requested that LINA treat the letter as a claim for long term disability benefits and that the insurance company provide a final decision on Kennedy's claim for long term disability benefits. *Id*.

8

LINA received the May 2015 letter the same day it was sent. *Id*. at 483. But LINA apparently never answered the letter.

In July 2015, Kennedy's counsel again wrote LINA and reiterated the requests. *Id*. at 548. Kennedy's counsel wrote:

> While [LINA] denied Mr. Kennedy's short term disability benefits, there is no indication that [LINA] rendered a decision on his long term disability benefits. Pursuant to its claims policies and procedures [LINA] was required to provide a long term disability investigation and decision—regardless of the decision on Mr. Kennedy's short term disability benefits.

*Id*. Kennedy's counsel continued:

> To the extent [LINA] did not perform the required investigation, please confirm Mr. Kennedy has exhausted his administrative options. Otherwise, please treat this letter as Mr. Kennedy's claim and request for [LINA] to provide a final decision on his claim for long term disability benefits.

*Id*. LINA appears not to have responded to this letter.

  E. <u>Procedural History</u>

In September 2015, Kennedy filed suit in this Court against LINA under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). Compl. ¶ 27, ECF No. 1. He asserts two causes of action—a breach of contract claim and a breach of fiduciary duty claim—arising from LINA's treatment of his putative claim for long term disability benefits. *Id*. ¶¶ 24–27. Kennedy seeks to enforce the contractual terms of the long term disability policy, to obtain past long term disability benefits, to receive reinstatement for payment of future long term disability benefits, to obtain declaratory relief, and to obtain other equitable relief, including surcharge. *Id*. He also seeks attorney fees and costs under 29 U.S.C. § 1132(g). *Id*. ¶¶ 28–29.

III. Discussion

LINA and Kennedy have filed motions for summary judgment. LINA's Mot. Summ. J. 1, ECF No. 27; Kennedy's Mot. Summ. J. 1, ECF No. 28. The Court will address LINA's motion for summary judgment and then will address two remaining issues raised by Kennedy's cross-motion for summary judgment. Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

    A.    LINA's Motion for Summary Judgment

LINA argues that the Court should grant summary judgment on the breach of contract and breach of fiduciary duty claims because (1) Kennedy failed to exhaust his administrative remedies regarding his claim for long term disability benefits, which is an affirmative defense to the present suit, and (2) Kennedy failed to adhere to the long term disability policy's time limits for submitting and appealing the denial of a claim and thus waived his right to exhaust his administrative process and to pursue an ERISA claim in federal court. LINA's Mem. Supp. Mot. Summ. J. 22–37, ECF No. 27-1.

*i. Whether Kennedy failed to exhaust his administrative remedies*

LINA maintains that Kennedy failed to exhaust his administrative remedies because he did not submit a claim for long term disability benefits, as was required by the long term disability policy. *Id*. at 22–28. LINA further contends that it was not required to transition Kennedy's claim for short term disability benefits into a claim for long term disability benefits under the terms of the policy and the facts underlying this case; thus, Kennedy did not exhaust his administrative remedies for a long term disability claim by filing a short term disability claim. LINA's Mem. Supp. Mot. Summ. J. 22–30, ECF No. 27-1.

Kennedy contends in opposition that he submitted a claim for long term disability benefits by filing a claim for short term disability benefits. Kennedy's Resp. Opp. Mot. Summ. J. 20–37, ECF No. 31. According to Kennedy, LINA's short-term-disability-to-long-term-disability-claims policy required it to convert his claim for short term disability benefits into a claim for long term disability benefits. *Id*.

Plaintiffs who bring claims under ERISA must exhaust their administrative remedies before filing suit in federal court. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (citing *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)). The exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (quoting *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989)). A plaintiff's failure to exhaust his or her administrative remedies is only excused when doing so would be "futile or the remedy inadequate." *Coomer*, 370 F.3d 499, 505 (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998)).

There appears to be no disagreement between the parties that Kennedy failed to directly submit a long term disability claim during the relevant time period, and there is no evidence in the record showing otherwise. And based on the evidence before the Court and taking the evidence in the light most favorable to Kennedy, Kennedy's claim for short term disability benefits did not meet the requirements for being transitioned into a claim for long term disability benefits under LINA's short-term-disability-to-long-term-disability-claim policy. LINA denied Kennedy's claim for short term disability benefits before they ever reached maximum duration; Kennedy's claim thus never could have reached maximum duration. Admin. R. 100, ECF No. 11. Moreover, LINA could not have expected that Kennedy's claim would reach maximum duration. Although Kennedy had filed two prior claims for short term disability benefits, these claims were separate incidents in which Kennedy provided sufficient notice and proof of loss of his medical conditions. *See* Admin. R. 46–47, 123–24, 315–16, ECF No. 11. Additionally, LINA was entitled to seek additional medical evidence, including evidence beyond the limited information provided by Dr. Willett, to determine whether Kennedy's claim would reach maximum duration. *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007) ("Requiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable."). Because LINA could not have expected that Kennedy's short term disability claim would reach maximum duration, the insurance company was not required to transition his claim into one for long term disability benefits under LINA's short-term-disability-to-long-term-disability-claims policy. Accordingly, Kennedy did not exhaust his administrative remedies on his claim for long term disability benefits.

> *ii. Whether Kennedy failed to adhere to the long term disability policy's time limits for submitting and appealing a claim and thus waived his right to exhaust his administrative process and to pursue an ERISA suit in federal court*

LINA also argues that the Court should grant summary judgment on the breach of contract and breach of fiduciary duty claims because Kennedy failed to submit or appeal the denial of a long term disability claim within the time limits required by the long term disability policy. LINA's Mem. Supp. Mot. Summ. J. 30–37, ECF No. 27-1. LINA first explains that the May 2015 letter from Kennedy's counsel, if treated as a notice of a claim and proof of loss for a long term disability claim, was still untimely under the terms of the long term disability policy, which bars him from pursuing his claims administratively or in federal court.[2] *Id.* at 30–33. Kennedy contends in opposition that the May 2015 letter was not an initial notice of a claim for long term disability benefits; instead, according to Kennedy, the May 2015 letter merely confirmed LINA's refusal to respond to him or to administer his claim. Kennedy's Resp. Opp. Mot. Summ. J. 30–31, ECF No. 31.

The contractual terms of an ERISA policy "should be enforced as written." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 611–12 (2013). Employers who provide disability and welfare plans have "large leeway" in designing the plans. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003). When a plan is established, the administrator must "maintain[] [the plan] pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).

---

[2] As described above, in May 2015, Kennedy's counsel wrote LINA and stated that the insurance company "failed to render a decision as to his long term disability (LTD) benefits." Admin. R. 520, ECF No. 11. In the letter, Kennedy's counsel requested that LINA confirm that Kennedy had exhausted his claim for long term and short term disability benefits. *Id.* Kennedy's counsel alternatively requested that LINA treat the letter as a claim for long term disability benefits and that the insurance company provide a final decision on Kennedy's claim for long term disability benefits. *Id.*

Here, LINA's long term disability policy expressly provides that notice of a claim should be given within thirty-one days of a covered loss occurring or as soon as reasonably possible. Lodi Decl. 21, ECF No. 27-2. Proof of loss must be given no more than one year and ninety days after the day of a covered loss occurring. *Id.* at 22. The policy states that "[i]f written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied." *Id.*

Kennedy became disabled on August 17, 2012. Admin. R. 276, ECF No. 11. One year and ninety days after August 17, 2012 is November 15, 2013. The May 2015 letter was written long after this date. According, if the May 2015 letter from Kennedy's counsel were treated as a notice for a claim and proof of loss for a claim for long term disability benefits, it would have been untimely under the express terms of the long term disability policy. Given this untimeliness, Kennedy was time-barred from proceeding on his claim for long term disability benefits in LINA's administrative forum and in this Court.

There is no evidence before the Court that Kennedy directly submitted a claim for long term disability benefits before sending the May 2015 letter. Nor was LINA required to transition Kennedy's claim for short term disability benefits into one for long term disability benefits. Given that there was no previous direct or transitioned claim for long term disability benefits, the letter could not have confirmed LINA's refusal to respond to Kennedy or to administer his claim, as Kennedy argues.

LINA secondly contends that if the May 2015 letter from Kennedy's counsel is treated as a request for an appeal of a denial of a long term disability claim, it was likewise untimely, which further supports its contention that Kennedy is barred from pursuing his claim administratively or in federal court. LINA's Mem. Supp. Mot. Summ. J. 32–33, EXF No. 27-1.

14

Kennedy does not appear to respond to this argument. This Court previously noted, "Failure to exercise [the] appeal right in a timely fashion results in it being impossible to exercise it at all, preventing a plaintiff from exhausting the administrative process and barring the door to the courthouse." *Laird v. Norton Healthcare, Inc.*, No. 3:08-cv-500-s, 2010 U.S. Dist. LEXIS 7349, at *5 (W.D. Ky. Jan.29, 2010).

The long term disability policy provides, "A written request for appeal must be made to the Insurance Company within 60 days (180 in the case of any claim for disability benefits) from the date the denial was received." Admin. R. 152, ECF No. 11. An employee who fails to timely appeal the denial of his claim waives the right to such an appeal. *Id*. Kennedy had ninety days and one year to file a claim, then 180 more days to file an appeal of the denial of a claim, for a total of 635 days in which to exhaust his administrative remedies. Kennedy's May 2015 letter was sent 1,001 days after August 17, 2012. If treated as a request for an appeal of a long term disability claim, the May 2015 letter would still have been untimely. Accordingly, Kennedy could not have pursued his claims in LINA's administrative forum or in federal court.

LINA thirdly argues that, even if Kennedy submitted a claim for long term disability benefits, he was on notice that it had denied his putative claim because it did not pay him any long term or short term disability benefits. LINA's Mem. Supp. Mot. Summ. J. 33–37, ECF No. 27-1. And as Kennedy did not appeal the denial of that claim, he waived his right to an appeal and is barred from exhausting his administrative remedies and pursuing his claims in federal court. *Id*. Kennedy asserts in opposition that LINA waived this argument after failing to assert it in its answer and that LINA misapplies the relevant case law. Kennedy's Resp. Opp. Mot. Summ. J. 37–40, ECF No. 31.

As an initial matter—and contrary to Kennedy's allegations—LINA did not waive this argument by failing to include it in its answer. In its answer, LINA asserts, "Despite being notified of his right to appeal and how to appeal, after LINA informed Plaintiff that it had denied his claim Plaintiff failed to request an administrative appeal and review of LINA's decision to deny his claim." Answer 7, ECF No. 6. Given that LINA included its waiver argument in its answer, the Court will now turn to the merits of LINA's third and final timeliness argument.

The regulations that accompany ERISA define an adverse benefit determination as the:

> denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan

29 C.F.R. § 2560.503-1(m)(4). The regulation, however, also states that "the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination." *Id*. § 2560.503-g(1). The regulation further requires that "[t]he notification shall set forth, in a manner calculated to be understood by the claimant:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

*Id*. § 2560.503-1(g).

Although LINA complied with these provisions regarding Kennedy's request for short term disability benefits, it wholly failed to do so with respect to an alleged long term disability claim. Assuming arguendo that he appropriately submitted a claim for long term disability

benefits, Kennedy never received notice of LINA's adverse determination on a putative long term disability claim, the reasons for the adverse determination, or a request for additional material information. As such, LINA's third timeliness argument lacks merit.

In sum, LINA is entitled to the affirmative defense of failure to exhaust administrative remedies because Kennedy never submitted a claim for long term disability benefits and LINA was not required to transition his claim for short term disability benefits into one for long term disability benefits. Additionally, Kennedy did not comply with the timing requirements of the long term disability policy if the May 2015 letter from his counsel is treated as a notice of a claim and proof of loss, or as an appeal of the denial of a long term disability claim. Thus, summary judgment will be granted on Kennedy's breach of contract and breach of fiduciary duty claims.

B. <u>Kennedy's Motion for Summary Judgment</u>

The Court now turns to two remaining issues raised by Kennedy's cross-motion for summary judgment. Kennedy's Mot. Summ. J. 1, ECF No. 28. First, Kennedy argues that summary judgment should be granted in his favor because LINA's failure to inform him that it would not transition his short term disability claim into a long term disability claim constitutes a breach of its fiduciary duties and warrants his claim for long term disability claim to be deemed filed. Kennedy's Mem. Supp. Mot. Summ. J. 29–31, ECF No. 28-1. LINA maintains in opposition that it could not have expected it would transition Kennedy's claim for short term disability benefits into a claim for long term disability benefits. LINA's Resp. Opp. Mot. Summ. J. 16–17, ECF No. 30.

Under ERISA, a fiduciary is defined, in part, as a person who "exercises any authority or control respecting . . . disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A)(i). The fiduciary must exercise its duties "with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (citing 29 U.S.C. § 1104 (1)(B)). As part of its duty of care, the fiduciary must "give complete and accurate information in response to participants' questions, a duty that does not require the fiduciary to disclose its internal deliberations nor interfere with the substantive aspects of the bargaining process." *Id*.

Here, and as noted above, Kennedy did not file a claim for long term disability benefits within the relevant time period. Nor did his claim for short term disability benefits meet the requirements for being transitioned into a claim for long term disability benefits under LINA's short-term-disability-to-long-term-disability-claim policy. As such, LINA could not have failed to give Kennedy complete and accurate information about the denial of a long term disability claim, and this Court will decline Kennedy's invitation to deem the putative long term disability claim as properly filed.

Second, Kennedy maintains that the administrative record supports his entitlement to long term disability benefits. Kennedy's Mem. Supp. Mot. Summ. J. 31–35, ECF No. 28-1. LINA argues in opposition that Kennedy failed to provide sufficient medical proof that he met the long term disability definition of "disabled." LINA's Resp. Opp. Mot. Summ. J. 17–31, ECF No. 30. Given that Kennedy failed to exhaust his administrative remedies, a prerequisite for filing a lawsuit under ERISA, *Coomer*, 370 F.3d at 504, the Court declines to review the merits of his putative claim for long term disability benefits. The Court will deny Kennedy's cross-motion for summary judgment.

IV. <u>Conclusion</u>

The Court will grant LINA's motion for summary judgment. The Court will also deny Kennedy's cross-motion for summary judgment. The complaint will be dismissed with prejudice. An order will be entered in accordance with this memorandum opinion.

July 6, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**